In the Matter of LION BREWERY OF NEW YORK CITY, Appellant, against ROBERT C. WEAVER, as State Rent Administrator, Respondent, and LAWRENCE BERENSON, Intervenor-Respondent.

First Department, June 11, 1959.

*Maurice R. Whitebook* of counsel (*Lewis, Herrick & Whitebook,* attorneys), for appellant.

*Harold Zucker* of counsel (*Nathan Heller,* attorney), for respondent.

*Lawrence Berenson,* intervenor-respondent in person.

BOTEIN, P. J.  The Rent Administrator has decided that the premises rented by the tenant are not "under-occupied", under the relevant provisions of the State Residential Rent Law and the implementing State Rent and Eviction Regulations.  As explained in the dissenting opinion, the housing accommodation involved here is a nine-room, so-called "luxury" apartment, containing two maids' rooms.  The family unit occupying this apartment has for many years included two maids who worked full time.  One has slept in continuously, the other sporadically, whenever required by the tenant.  During one period the last-mentioned maid slept in continuously for 9 or 10 months, while her employer was in Europe.  More significantly, however, one room is assigned to her exclusively — to store and change her clothes, rest, do her personal ironing and other chores, and to sleep in overnight when required.

If this maid is deemed an occupant of the room assigned to her, under the applicable statute and regulation, then the apartment is not under-occupied.  If she is not such an occupant, the landlord is entitled to the certificate of eviction that he seeks. ·

Subdivision 3 of section 5 of the statute delegates to the Commission authority to "adopt   *   *   *   such rules, regulations or orders as it may deem necessary or proper for the control of evictions" (State Residential Rent Law; L. 1946, ch. 274, as amd. by L. 1951, ch. 443).  Section 57 of the State Rent and Eviction Regulations, insofar as pertinent, provides:

" An apartment may be deemed under-occupied when there is less than one occupant for each room, exclusive of bathrooms, kitchen, and three additional rooms." The regulation does not define who constitutes an occupant, other than specifically to exclude from its meaning " [r]oomers or boarders who are not members of the tenant's family ".

This reluctance to define occupants, or to list categories of nonoccupants other than roomers or lodgers, indicates a design to reserve a wide range of discretion in the Rent Administrator. The wording of the regulation would appear to encourage something of the nature of the very *ad hoc* determination deplored in the dissenting opinion. And understandably so, because amidst the competing concerns of emergency rent legislation — particularly when sought to be applied in a complex metropolitan society — the term " occupant " eludes capture as a constant for all rental situations.

The most efficient utilization of the community's supply of housing space is apparently not the sole or controlling consideration in applying regulation 57, for a lodger is not regarded as an occupant, even though his room constitutes his sole and exclusive living quarters. On the other hand, a child off to boarding school or college for a long period of time, punctuated by rare and short visits to the parental home, is an occupant even though his room is seldom used. The parties to this proceeding concede that maids who sleep in regularly are occupants; and yet it is common knowledge that many of these maids rent or share rooms away from their place of work that they occupy during their vacations or days off. The dichotomy confronting the Administrator in executing the mandate of regulation 57 may often be the resolution of two conflicting social pressures — to release as much unoccupied space as possible in order to relieve the housing shortage, while also preserving a normal, healthy family unit.

The landlord itself has designated the room in question as a maid's room. The room, as part of the apartment, has never been offered by the landlord for any purpose other than use by a maid. In short, the owner of this luxury apartment house has always recognized that two full-time maids are the usual complement of a family unit occupying the nine-room apartment. Certainly, when originally rented, neither landlord nor tenant contemplated any more than that the two rooms might be used exclusively by two maids. The applicable statute and regulation can hardly be strained, in the situation presented here, to invade the province of the lady of the house and require

that both maids sleep in regularly. We cannot find that the Administrator abused his discretion in ruling as he did.

In *Matter of Freymann* v. *Weaver* (8 A D 2d 704), cited in the dissenting opinion, this court held that it could not be said that there was no reasonable basis for the Administrator's determination. There were ample grounds in the *Freymann* matter for the finding that the woman who occasionally occupied the room in dispute, and who served the tenant and many others as a dance instructress, was not a member of the family unit. Applying the same norms for judicial review as we did in the *Freymann* matter, we likewise cannot disturb the Administrator's determination in this case. The facts and circumstances support strongly his decision to the effect that both maids were members of the family unit.

The order at Special Term should be affirmed, on the facts and law, with costs.

M. M. FRANK, J. (dissenting). In this article 78 proceeding I must dissent and vote to annul the determination of the State Rent Administrator and to remand with a direction that a certificate of eviction be issued.

The Local Rent Administrator, after an examination of the facts, granted a certificate of eviction. On the tenant's protest, the State Administrator reversed the local Administrator and vacated the certificate. Special Term denied the application to review and annul the determination, and dismissed the petition.

The petitioner is the owner of 1150 Fifth Avenue, a luxury apartment house. The tenant intervenor occupies apartment 7B, consisting of nine rooms, at a controlled rental of $239.56 per month. Included in the room count are two bedrooms referred to throughout the proceeding as maids' rooms.

The proceeding for a certificate of eviction is predicated upon section 57 of the State Rent and Eviction Regulations promulgated pursuant to the rent and eviction statutes (State Residential Rent Law, § 5, subd. 3; L. 1946, ch. 274, as amd.). In substance, the regulation provides that where the landlord seeks, in good faith, to alter or remodel an under-occupied accommodation containing six or more rooms, a certificate may issue. It states that: " An apartment may be deemed under-occupied when there is less than one occupant for each room, exclusive of bathrooms, kitchen, and three additional rooms. Roomers or boarders who are not members of the tenant's family shall not be counted as occupants."

The only question posed here is under-occupancy. The tenant's family consists of father, mother and daughter. To be deemed under-occupied, pursuant to the regulation, the family unit in the apartment in question could not be composed of more than four people. The tenant employs one full-time sleep-in maid who occupies one of the two bedrooms hereinabove mentioned. There is another maid, Margaret Mascall, who is regularly employed and is claimed as a member of the family unit by the tenant. This claim is strenuously opposed by the landlord. Whether the family unit comprises four or five people is, therefore, the nub of the dispute. The State Rent Administrator, in denying the certificate, has held that this employee has the status of sleep-in maid and is to be included as a member of the family unit.

There is no dispute that Margaret Mascall has since 1936, long before she started her employment with the tenant, maintained an apartment at 60 West 119th Street. She receives her mail, pays the rent and has an elderly aunt living with her at that address.

To overcome this uncontroverted proof, it is urged that she maintains that apartment because her relative cannot live alone, that she occupies the room in the tenant's apartment whenever she can, or when the daughter's health requires it, or for rest periods during her hours of employment. The record discloses, however, that from March 28 to August 18, 1958, a period of four and a half months, she slept in that room only four times. It also appears that the examiner " finds that the maid, Margaret Mascall, is not a regular sleep-in maid." In my view, this employee is nothing other than a day worker as the term is commonly used by housewives in New York City.

The fact that there happens to be a spare room, otherwise unoccupied, in this large apartment, should not be permitted to be used as a subterfuge by the tenant to circumvent the Administrator's interpretation of his regulations. Moreover, the Administrator overlooks the difference between the designation, on a floor plan, of a bed chamber as a " maid's room " and its irregular and sporadic occupancy by a day worker.

Of course, a maid or other domestic employee is not generally considered a member of the family or of the family unit in the household wherein that person is employed. For the purpose of the eviction regulations the inclusion of such an employee as a member of a family unit may be appropriate under proper circumstances. The unrestricted inclusion of casual employees and those not actually in residence would nullify and defeat the legislative intent to make additional housing units available where,

as here, the landlord proposes to create two separate self-contained units.

To determine whether the Administrator is exercising permissible discretion, it is appropriate to examine the interpretation given to the regulations by the commission. In discussing section 57, the Administrator in his Opinion No. 55 states "For example the Administrator *may* determine that a full-time maid or servant *who sleeps in* is an occupant and part of the family unit for the purposes of this section * * *" (emphasis supplied). It is evident from the foregoing, that the Administrator does not assume that he is required or mandated to hold that full-time sleep-in maid must be included in the count of a family unit in assessing the question of under-occupancy.

Assuming *arguendo* that the Administrator is correct and that he may exclude a sleep-in maid from the family unit count, then the inclusion of Margaret Mascall is not in keeping with any consistent standard, and leaves the impression that determinations of this nature may be made on an *ad hoc* basis.

In *Matter of Freymann* v. *Weaver* (8 A D 2d 704), in which we sustained the Administrator's determination, he held, in substance, that a woman who occupied a room in an apartment and received a small weekly stipend in exchange for tutorial service and dance instruction was not to be counted as a member of the family, since she was permitted outside employment and was not required to sleep in. One of the factors which the Administrator took into consideration was that the employee was not required to sleep in. Although that is the precise situation here, it appears to have been overlooked by the State Administrator.

Under the circumstances, in my opinion, the denial of a certificate by the State Administrator was arbitrary and unreasonable.

RABIN, VALENTE and McNALLY, JJ., concur with BOTEIN, P. J.; M. M. FRANK, J., dissents and votes to remand in opinion.

Order affirmed, on the facts and on the law, with $20 costs and disbursements to the respondents.